## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

IHAB HASSAN,

        Plaintiff,

v.

The CENTRAL MICHIGAN
UNIVERSITY BOARD OF TRUSTEES,
PAULA LANCASTER, *in her official
and individual capacities*,
GREGORY ZIMMERMAN, *in his
official and individual capacities*,
KATHLEEN FLANNERY, *in her official
and individual capacities*, APRIL
ADADO, *in her official and individual
capacities*, BRITTANY REIBER, *in her
official and individual capacities*,
TAMARA MOUTSATSON, *in her
official and individual capacities*, and
ELIZABETH FRUTIGER, *in her official
and individual capacities*,

        Defendants.

Case No.

Hon.

---

Fabiola A. Galguera (P84212)
NACHTLAW, P.C.
*Attorneys for Plaintiff*
501 Avis Drive, Suite 3
Ann Arbor, MI 48108
(734) 663-7550
fgalguera@nachtlaw.com

---

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff Ihab Hassan (hereinafter "Mr. Hassan" or

"Plaintiff"), by and through undersigned counsel NACHTLAW, P.C., and hereby respectfully submits the following:

## **INTRODUCTION**

1.      Plaintiff Ihab Hassan hereby brings an action for injunctive relief, compensatory damages, attorneys' fees, and costs for violation of: (1) the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, pursuant to 42 U.S.C. § 1983; (2) 42 U.S.C. § 1981 pursuant to 42 U.S.C. § 1983; (3) Title VI of the Civil Rights Act of 1964; and (4)

2.      Plaintiff is a disabled, Middle Eastern man residing in Mount Pleasant, Michigan.

3.      Defendant the CMU Board of Trustees is an eight-member Board elected by Michigan voters, which is responsible for selecting CMU presidents, supervising the control and direction of university funds, setting tuition and other fiscal policies, determining compensation for services, and conferring degrees at CMU, a public university located in Mount Pleasant, Michigan.

4.      Defendant Paula Lancaster is the Dean of the College of Education and Human Services at CMU.

5.      Defendant Gregory Zimmerman is the Associate Dean of the College of Education and Human Services at CMU.

6.      Defendant Kathleen Flannery is the Director of the CMU PA Program and a member of the Student Progress Committee that dismissed Plaintiff from CMU.

7.      Defendants Adado, Reiber, Moutsatson, and Frutiger are members of the Student Progress Committee that dismissed Plaintiff from CMU.

8.      The events underlying this Complaint occurred in Mount Pleasant, Michigan, within the Eastern District of Michigan.

9.      This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

## FACTUAL ALLEGATIONS

### Plaintiff was denied disability accommodations throughout his time at CMU.

10.      Mr. Hassan is a disabled student of foreign national origin.

11.      He suffers from ADHD, PTSD, and a shattered knee as a result of torture and imprisonment during his time in Iraq.

12.      The torture Mr. Hassan experienced resulted in about eight plastic and orthognathic surgeries in the United States to repair some of the physical harm he experienced, which included – beyond the shattered knee – having acid spilt on his scalp, having his nose and teeth broken, and cigarettes put out on his torso.

13.      In September of 2022, Mr. Hassan filed for accommodations due to his disabilities.

3

14.    Those accommodations were amended every semester, with the final renewal just before his sudden dismissal on September 3, 2024.

15.    In July of 2023, Mr. Hassan failed an OBGYN exam due to his disability.

16.    Despite having accommodations and meeting the program's GPA requirements, Mr. Hassan was not given the opportunity to remediate the exam as outlined in the Physician Assistant (hereinafter "PA") program's policy handbook.

17.    Upon reasonable belief, at the time, Mr. Hassan was the only disabled student of foreign national origin who received this disparate treatment.

18.    CMU applied different standards to Mr. Hassan than to similarly situated students outside of his protected classes.

19.    CMU did not have a legitimate reason to deny Mr. Hassan remediation.

20.    Another student filed a complaint with the CMU's Office of Civil Rights and Institutional Equity (hereinafter referred to as "OCRIE") related to unfair treatment for remediation.

21.    That complaint was successful, which led CMU to compel the PA program to allow remediation of Mr. Hassan's exam, as he had requested.

22.    This success with OCRIE appeared to put a target on Mr. Hassan's back.

4

23.     On the day of the exam, and the days leading up to the exam, Mr. Hassan was humiliated by Debra Kimball Christie, then the program director of CMU's PA program.

24.     Despite being told he would choose the day and time of the remediation, Ms. Kimball forced Mr. Hassan to sit for the exam when it was convenient for her.

25.     Despite picking the date and time at her convenience, Ms. Kimball then held Mr. Hassan for over *an hour* past the start time of the exam without explanation.

26.     Ms. Kimball's assistant apologized profusely to Mr. Hassan because she did not even understand the delay.

27.     This caused Mr. Hassan significant emotional distress, as aggravation of his ADHD and/or PTSD resulted in intense anxiety.

28.     When Ms. Kimball finally addressed Mr. Hassan, she explained *she was writing the exam on the spot*.

29.     Remediation exams are typically comprised of a student's missed questions, not a full new exam.

30.     Mr. Hasssan's remediation – on several points – violated CMU's policies and directions.

31.     Ms. Kimball decided to write a new exam despite not administering the curriculum for that class, leading to questions on topics that were not fully covered in class.

5

32.     After Mr. Hassan sat for this improperly administered remediation, Ms. Kimball indicated to Mr. Hassan that he had failed.

33.     Mr. Hassan was able to convince Ms. Kimball to review CMU's instructions as to the administration of the exam, which clearly showed where Ms. Kimball had disregarded instruction.

34.     Ms. Kimball, at first, did not want to review these facts but once she did, she simply apologized and told him to wait so he could take the proper remediation exam right then and there after hours of examination already.

35.     Mr. Hassan passed the remediation, a fact which Ms. Kimball tried to challenge.

36.     When the score came back as a pass, Ms. Kimball – with zero evidence or reason – accused Mr. Hassan of cheating.

37.     Ms. Kimball dropped the accusation when Mr. Hassan expressed that he passed due to having prepared thoroughly, but she indicated to him that regardless of whether he passed this examination, she "doubted" he would become PA.

38.     It was with this backdrop that Mr. Hassan returned to the Program.

39.     Around this same time, Kathleen Flannery, now director of the PA program, approached one of Mr. Hassan's professors to share *her diagnosis* of Mr. Hassan's mental wellbeing despite *never* having seen Mr. Hassan in a clinical capacity.

40.     Defendant Flannery went so far as to highlight what "symptoms" she felt Mr. Hassan exhibited and to pass on information for a psychiatrist she recommended.

41.     Defendant Flannery took a particular and inappropriate interest in Mr. Hassan's mental health without consulting with Mr. Hassan.

42.     After Mr. Hassan successfully remediated, Mr. Hassan was still treated differently upon readmission, as described below.

### Defendant denied Mr. Hassan training assistance to accommodate his disabilities, even when he sought help.

43.     In January of 2024, Mr. Hassan was allowed to start his clinical year.

44.     Given his months-long break from the clinical program, including a six-month suspension after his failure of the OBGYN exam, Mr. Hassan had largely forgotten how to use Typhon, the clinic's student tracking system, which is not intuitive software.

45.     When Mr. Hassan passed his exam and started his clinical rotations, CMU did not offer him any refresher training on Typhon to ensure that Mr. Hassan was on the right track, even though Defendant was aware of Mr. Hassan's disability and health condition.

46.     Mr. Hassan was not told during his rotation that there were any concerns about his case logs, which were receiving weekly approvals.

7

47.    In fact, once he returned in January of 2024, Mr. Hassan had been consistently seeking and requesting support regarding Typhon, to confirm he was meeting standards.

48.    He received a passing grade and completed several other rotations.

49.    Mr. Hassan was not given any concrete negative feedback nor was he notified about any kind of policy concern until September 23, 2024, when he was suddenly informed that he was being dismissed due to policy violations that were never brought to his attention.

50.    He was suddenly confronted with Typhon entries that had already been approved months prior.

51.    Between the months of January and September of 2024, his clinical advisor approved all patient entries and failed to provide Mr. Hassan any feedback.

52.    It was only when Mr. Hassan had just one more semester to graduate—and had once again requested evaluation for accommodations—that Defendant singled him out of a group of 40 students to review case log assignments.

53.    This decision came within a month of Mr. Hassan's submission of additional requests and information for his disability accommodations.

54.    Defendant singled him out due to his disability.

55.    On September 23, 2024, Defendant Flannery met with Mr. Hassan to inform him that the process of dismissing him from CMU had been initiated.

## Defendant used Mr. Hassan's minor infraction as pretext to dismiss him due to disability.

56.     Only two days later, on September 25, 2024, Defendant dismissed Mr. Hassan.

57.     Mr. Hassan was dismissed based on allegations of academic dishonesty, specifically "Fabrications, Forgery, and Multiple Submissions," and "falsification of documents during a clinical experience."

58.     Mr. Hassan vehemently denies any wrongdoing. He was given less than 48 hours to address CMU's concerns before he was dismissed by the Student Progress Committee.

59.     He was not given a proper opportunity to be heard; he was not presented with all the evidence against him and, based on his communications with the school, it was clear that the decision to dismiss him had already been made by the time he received the official notification.

60.     The situation from January 2024 was used as an inappropriate vehicle to push him out after he exercised his ADA rights, successfully remediated his exam, and lodged multiple complaints against the Program Director.

## Mr. Hassan was further deprived of his process rights when his appeal was mishandled.

61.     Mr. Hassan filed an appeal of his dismissal which was denied by the Dean's Office, headed by Paula Lancaster.

9

62.     Upon reasonable belief, the Associate Dean, Gregory Zimmerman, was involved in the review as well.

63.     Through counsel, Mr. Hassan flagged concerns about the process he was granted and requested opportunities to meet before a final decision was made.

64.     Between October 8, 2024 and February 10, 2025, Mr. Hassan tried to meet with various CMU representatives in hopes of being given a chance to be fairly heard, but his appeal was ultimately rejected.

**Mr. Hassan was the only Arab and/or Middle Eastern student in this cohort.**

65.     Mr. Hassan, as the only Arab student, has been particularly singled out and dismissed this way upon reasonable belief.

66.     Upon reasonable belief, Mr. Hassan's case logs were the only ones pulled months after the rotation ended.

## COUNT I
**Violation of the Due Process Clause of the
Fourteenth Amendment to the U.S. Constitution
Pursuant to 42 U.S.C. § 1983**
*(Against the individual defendants for money damages in their personal capacities
and declaratory and injunctive relief in their official capacities)*

10.     Plaintiff incorporates the preceding allegations as if fully restated herein.

11.     The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution provides that "no state shall… deny to any person within its jurisdiction

the equal protection of the laws."

12.     Section 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by persons acting under the color of law.

13.     Defendants acted under the color of state law in taking the actions described *supra*.

14.     A reasonable person or public official should have known that it is a violation of a person's clearly established constitutional rights to discriminate against him based on disability and national origin in a publicly funded educational program.

15.     Accordingly, Defendants' actions outlined *supra* violated Plaintiff's clearly established constitutional rights, of which any reasonable person in their position would have known; Defendants are therefore not entitled to qualified immunity.

16.     Plaintiff is entitled to punitive damages because Defendants engaged in the above-described conduct with malicious intent, in callous disregard of Plaintiff's federally protected rights.

17.     Plaintiff has suffered damages and injury and will continue to suffer damages including loss of income and earning capacity, injury to his reputation,

emotional distress, and other losses because of Defendants' unlawful acts set forth herein and to be proved at trial.

18.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has had to retain the services of an attorney and will continue to so suffer in the future.

**COUNT II**
**Violation of 42 U.S.C. § 1981**
**Pursuant to 42 U.S.C. § 1983**
*(Against the individual defendants for money damages in their personal capacities and declaratory and injunctive relief in their official capacities)*

19.    Plaintiff incorporates the preceding allegations as if fully restated herein.

20.    Section 1981 provides:

Equal Rights Under the Law. All persons in the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts to sue, be parties, give evidence, and to the full and equal benefit of all of laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses and exactions of every kind, and to no other.

21.    Under the 14th Amendment, Plaintiff has the guaranteed right to make and enforce contracts free from discrimination.

22.    Section 1981 prohibits intentional discrimination in the making and enforcement of contracts involving both public and private actors.

23.     Section 1983 protects against the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws," including Section 1981, by persons acting under the color of law.

24.     Defendants have discriminated against Plaintiff in violation of Section 1981 and deprived him of his civil right to make and enforce contracts free from racial discrimination by the conduct described herein, including but not limited to dismissing him from CMU.

25.     Defendants acted under the color of state law in taking the actions described *supra*.

26.     A reasonable person or public official should have known that it is a violation of a person's clearly established constitutional rights to discriminate against him on the basis of race and national origin in a publicly funded educational program.

27.     Accordingly, Defendants' actions outlined *supra* violated Plaintiff's clearly established constitutional rights, of which any reasonable person in their position would have known; Defendants are therefore not entitled to qualified immunity.

28.     Plaintiff is entitled to punitive damages because Defendants engaged in the above-described conduct with malicious intent, in callous disregard of Plaintiff's federally protected rights.

29.     Plaintiff has suffered damages and injury and will continue to suffer damages including loss of income and earning capacity, injury to his reputation, emotional distress, and other losses because of Defendants' unlawful acts set forth herein and to be proved at trial.

30.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has had to retain the services of an attorney and will continue to so suffer in the future.

## COUNT III
### Violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d
*(Against Defendant the CMU Board of Trustees)*

31.     Plaintiff incorporates the preceding allegations as if fully restated herein.

32.     Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

33.     As a public university, CMU received and continues to receive federal financial assistance.

34.     Defendant the CMU Board of Trustees subjected Plaintiff to intentional discrimination, excluded him from participation in, and denied him the benefits

14

offered by CMU by the actions described herein, including but not limited to dismissing him from CMU.

35.     Plaintiff has suffered damages and injury and will continue to suffer damages including loss of income and earning capacity, injury to his reputation, emotional distress, and other losses because of Defendant the CMU Board of Trustees' unlawful acts set forth herein and to be proved at trial.

36.     As a direct and proximate result of Defendant the CMU Board of Trustees' unlawful actions, Plaintiff has had to retain the services of an attorney and will continue to so suffer in the future.

**COUNT IV**
**Disability Discrimination in Violation of the ADA**
*(Against Defendant the CMU Board of Trustees)*

37.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

38.     The ADA was passed as a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.

39.     Title II of the ADA prohibits discrimination against qualified persons with disabilities in the provision of public services, programs, and activities, including a public university in its educational programs that are available to students.

40.     Persons with disabilities are "qualified" if, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, they meet the essential requirements for participation in the services, programs, or activities.

41.     Congress abrogated Eleventh Amendment immunity for suits brought under Title II of the ADA.

42.     Plaintiff is an individual with numerous disabilities, including ADHD, PTSD, and a shattered knee as a result of torture and imprisonment during his time in Iraq.

43.     These conditions substantially limit Plaintiff's major life activities and are "qualified disabilities" under federal law.

44.     Defendant the CMU Board of Trustees discriminated against Plaintiff under the ADA by, *inter alia*, failing to adequately accommodate his disabilities and discharging him from CMU.

45.     Defendant the CMU Board of Trustees acted willfully in violating the ADA.

46.     As a result of Defendant the CMU Board of Trustees' discrimination and failure to adequately accommodate Plaintiff's disabilities, he has suffered damages and injury and will continue to suffer damages including loss of income

16

and earning capacity, injury to his reputation, emotional distress, and other losses because of Defendants' unlawful acts set forth herein and to be proved at trial.

47.    As a direct and proximate result of Defendant the CMU Board of Trustees' unlawful actions, Plaintiff has had to retain the services of an attorney and will continue to so suffer in the future.

### COUNT V
**Retaliation in Violation of the ADA**
**42 U.S.C. § 12101,** *et seq.*
*(Against Defendant the CMU Board of Trustees)*

48.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

49.    Plaintiff engaged in federally protected activity including but not limited to by repeatedly requesting adequate accommodation of his disabilities under the ADA.

50.    Defendant the CMU Board of Trustees retaliated against Plaintiff by, *inter alia*, discharging him from CMU.

51.    But for Plaintiff's protected activity, Defendant the CMU Board of Trustees would not have taken retaliatory action against him.

52.    Defendant the CMU Board of Trustees' actions were taken in reckless disregard of Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

17

53.    As a direct and proximate result of Defendant the CMU Board of Trustees' unlawful actions, Plaintiff has suffered irreparable harm, injury, and damages, including, but not limited to, loss of employment and income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation, and will continue to so suffer in the future.

54.    As a direct and proximate result of Defendant the CMU Board of Trustees' unlawful actions, Plaintiff has had to retain the services of an attorney and will continue to so suffer in the future.

### COUNT VI
**Disability Discrimination in Violation of Section 504 of the Rehabilitation Act**
*(Against Defendant the CMU Board of Trustees)*

55.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

56.    Section 504 prohibits discrimination against qualified persons with disabilities in any program or activity receiving Federal financial assistance, including a public university in its educational programs that are available to students.

57.    Persons with disabilities are "qualified" if, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and

services, they meet the essential requirements for participation in the services, programs, or activities.

58.     Congress abrogated Eleventh Amendment immunity for suits brought under Section 504.

59.     Plaintiff is an individual with numerous disabilities, including ADHD, PTSD, and a shattered knee as a result of torture and imprisonment during his time in Iraq.

60.     These conditions substantially limit Plaintiff's major life activities and are "qualified disabilities" under federal law.

61.     Defendant the CMU Board of Trustees discriminated against Plaintiff under the ADA by, *inter alia*, failing to adequately accommodate his disabilities and discharging him from CMU.

62.     Defendant the CMU Board of Trustees acted willfully in violating Section 504.

63.     As a result of Defendant the CMU Board of Trustees' discrimination and failure to adequately accommodate Plaintiff's disabilities, he has suffered damages and injury and will continue to suffer damages including loss of income and earning capacity, injury to his reputation, emotional distress, and other losses because of Defendants' unlawful acts set forth herein and to be proved at trial.

64.     As a direct and proximate result of Defendant the CMU Board of Trustees' unlawful actions, Plaintiff has had to retain the services of an attorney and will continue to so suffer in the future.

**COUNT VII**
**Retaliation in Violation of Section 504 of the Rehabilitation Act**
**28 U.S.C. § 794,** *et seq.*
*(Against Defendant the CMU Board of Trustees)*

65.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

66.     Plaintiff engaged in federally protected activity including but not limited to by repeatedly requesting adequate accommodation of his disabilities under Section 504.

67.     Defendant the CMU Board of Trustees retaliated against Plaintiff by, *inter alia*, discharging him from CMU.

68.     But for Plaintiff's protected activity, Defendant the CMU Board of Trustees would not have taken retaliatory action against him.

69.     Defendant the CMU Board of Trustees' actions were taken in reckless disregard of Plaintiff's federally protected civil rights, entitling Plaintiff to punitive damages.

70.     As a direct and proximate result of Defendant the CMU Board of Trustees' unlawful actions, Plaintiff has suffered irreparable harm, injury, and

20

damages, including, but not limited to, loss of employment and income; loss of career opportunities and earning capacity; mental and emotional distress; humiliation and embarrassment; and loss of personal and professional reputation, and will continue to so suffer in the future.

71.    As a direct and proximate result of Defendant the CMU Board of Trustees' unlawful actions, Plaintiff has had to retain the services of an attorney and will continue to so suffer in the future.

## **RELIEF REQUESTED**

For all the foregoing reasons, Plaintiff demands judgment against Defendants as follows:

a. A declaration that the practices and actions of Defendants are unlawful practices in violation of the U.S. Constitution, 42 U.S.C. § 1983, 42 U.S.C. § 1981, Title VI, the ADA, and the Rehabilitation Act;

b. An award of compensatory damages in whatever amount he is found to be entitled;

c. An award of punitive damages in whatever amount he is found to be entitled;

d. An award of interest, costs, reasonable attorney fees, and expert witness fees;

e. All appropriate equitable and/or injunctive relief; and

f. Whatever other relief this Court deems appropriate.

## **JURY DEMAND**

Plaintiff Ihab Hassan, by and through his attorneys, NACHTLAW, P.C., hereby demands a trial by jury of the issues so triable in the above-captioned cause of action.

Respectfully submitted,

**NACHTLAW, P.C.**

*/s/ Fabiola A. Galguera*
Fabiola A. Galguera (P84212)
Attorneys for Plaintiff
501 Avis Drive, Suite 3,
Ann Arbor, MI 48108
(734) 663-7550
Fgalguera@nachtlaw.com

Dated: December 23, 2025